Good morning, Your Honors. My name is Mary Jean Chan, and I represent the United States in this government appeal of the District Court's Suppression and Dismissal Orders. I would like to reserve four minutes for rebuttal. This Court should reverse the District Court's suppression order both because the District Court wrongly analyzed the standing issue, which I use as shorthand for whether Biddle retained an expectation of privacy in the car, and also because the officer's community caretaking function justified the inventory search. I'd like to focus on the standing analysis, and the standing analysis that the District Court conducted was wrong for two reasons. First, the District Court used the wrong legal standard, and even using its flawed standard, its analysis was clearly erroneous. Now, the legal standard that applies in standing issues is not – requires the Court to look at the totality of the circumstances, and is not curtailed by any officer knowledge limitation as the Court used in this case. But, counsel, with due respect, your argument almost defies common sense. What happened in this case is just – I read the case, and I couldn't believe what I was reading. And I read it again, and I read it again, and I thought, what are you talking about here? Here's a car that's running. You've got a whole bunch of people around. The guy's inside. The police come and immediately start looking through things, and ask things, and pound the car, and so on, using concept of abandonment, and so on. I know you want to try to parse this, but, I mean, if you just go down, you know, minute by minute, what happened, how can you – how can you argue the totality of the circumstances that the police were justified in what they did here? Well, first, I would like to clarify that there's abandonment in many senses, and that, I think, is a source of confusion, potentially, for this Court, and I think certainly was for the District Court. There's abandonment as it was used in a statutory sense, and perhaps with a common parlance, which is something's left in the ditch for months and months. It's abandoned. Nobody's ever going to come claim it again. And then there is abandonment in the Fourth Amendment context, where it comes to expectation of privacy, where you've abandoned something, and your expectation that somebody does not access it and should not have access to it. Well, let me give you this example. Let's assume that a family's driving along. The mother's got three or four kids in the car, and they've got a little child that needs to go to the bathroom. And you're out there in the woods, near the woods, and they pull aside over the car, and there are three kids waiting outside the car, and the mother goes in the woods with the little kid. Can the police come along and say, you know what? There's nobody around here claiming this car. It is running, and there's a radio on, and there's these kids out here, but we think this car is abandoned. Is that okay? I don't think that the totality of circumstances in that case, the scenario you just used, would support a finding of abandonment for a Fourth Amendment because the mother wasn't there. The mother wasn't there asking. No, she was out in the woods with the little kid. That's correct. In this case, Biddle was inside. No. The car was running. The radio was on. There were a lot of people standing around. Well, I disagree, Your Honor. The facts don't show that Biddle was inside anywhere. In fact, Biddle conceded in his testimony that he was there outside from the gecko when the officers came up to look and investigate. They came across an unattended vehicle with the key and ignition running, the doors wide open, music blasting so loud that nobody could be heard. Had anybody complained about the music? Not yet, but they – But you don't know whether they would have, right? I don't, but it was a residential neighborhood. It had nothing to do with the abandonment analysis, right? The music playing loud? How does that relate to your abandonment argument? How it relates is that Biddle, who was there, even if he was a little bit further away, would have been on notice that the officers were coming or had arrived because the music suddenly cut off. So if he had left his car running with the music very loud and just gone to the liquor store for a moment or somewhere, he would have been on notice that something had changed. The scenario was drastically different than when he left it. Had he been on notice that his car was about to be taken away because it had been abandoned? Well, he was in the crowd, I believe the testimony shows, when the officers asked, whose car is this because we need to find somebody to give the keys back to, otherwise it will be towed. So he was on notice that if he didn't claim ownership and take responsibility for the car, that it would be towed or that was a potential outcome of the situation. He specifically refused to take responsibility for the car. Didn't the officers search the glove compartment before he did anything else? No, Your Honor. What did he do first? What he did first was he cut off the music so that he could be heard and that it would immobilize the car because it was a security issue in terms of the safety of the car. Then he started asking, whose car is this? He took the keys. He took the keys and then he immediately sought to return the key and the custody of the car to its rightful owner. So he immediately asked, whose car is this? I'd like to give this car back to its rightful owner. And asked and didn't want to receive any responses, at which time they then ran the license at 12-08 of the car, found out after actually two attempts that it belonged to somebody named Ronnie Biddle, then specifically asked the crowd, hey, where's Ronnie? By name, where's Biddle? We would like him to take responsibility for this car. And at this time, nobody was taking responsibility for the car, so the officer testified, Officer Wise testified, that in his experience, sometimes the registered owner is not, in fact, the actual owner at that time because there's a lag time for the DMV to update things. Let me just stop you there. According to the government, what are the elements that must be shown to prove abandonment under this circumstance? Well, in this circuit, and the cases Burnett and Nordling, this Court has said that there are two hallmarks of abandonment. One is the disclaimer of a property, and the second is physical relinquishment. And in this case, you have both. First, Biddle concealed himself when the property was thought to be his. Did he have an obligation to identify himself? Is there a statute or a constitutional obligation for him to respond to the officer's inquiry about the keys and the ownership of the car? No. He had every right to abandon it, as he did in this case. I'm not talking about abandonment. Did he have an obligation to identify himself at that point? Did he have a – And if so, what is the basis of that obligation? Well, it's – there's no – the obligation is to claim the right to claim the car. Okay. And where do you find that obligation? Is there a statute? Is there a case that says he has to do that? Well, no, Your Honor. But when he doesn't do that, I believe what that goes to is a finding of abandonment. Well, let's go back to my mom and the kids. Right. She's out in the woods with the little kid, going to the bathroom. You know, she doesn't claim the car. She's frightened. I don't know who's even out there. And so does that mean that she's abandoned the car? They pull the keys out. Hey, anybody here? Nobody's here. Let's pull it away. Well, Your Honor, I mean, I think in that situation, it would depend on certain factors. For example, if the mother heard from the woods that the police were trying to identify the car, and she chose to keep silent and didn't respond, hey, I'm coming. What if she was an illegal alien and she was afraid to come out? Well, Your Honor, the – if you're getting at it, which is that there's some sort of a Fifth Amendment type of – No, what I'm getting at is – Yes. The government's relying on the totality of the circumstances here. Correct. I've looked at the totality of the circumstances. I'm having real difficulty with this. I'm wanting you to help me. Sure. On what basis can they treat this as being abandoned, the automobile as being abandoned, given all of the facts? I could go through and recite them. Right. But I want to take your time here. What are the big points here? You say, well, he picked the keys out and asked for somebody. He didn't respond. And I'm saying under what standard, under what statute or case did he have an obligation to respond? So far, I don't think you've told me one. What else – what are the other standards here? Well, for example, in the Kendall case, the defendant named Akers was next to a piece of luggage that belonged to him. He had the claim ticket for that. And he wasn't even specifically asked whether that piece of luggage belonged to him, but he saw somebody else's claim interest in it. This is an airport case, though, right? This is an airport case. That's a little different. Well, if I may just – I understand that it can be distinguished on some grounds, but this Court specifically said that because he failed to identify himself, even though he wasn't asked specifically whether that luggage was his, but because he failed to say, yes, that's my piece of luggage, and then he walked away from the airport leaving that luggage there, even though he later on tried to reclaim that baggage, that that constituted abandonment under the Ninth Circuit precedent under Fourth Amendment analysis. But then that's a border analysis and national security and all that sort of thing. That's a little different issue, isn't it? I don't think so, Your Honor, because the issue here is the Fourth Amendment interest. And the Fourth Amendment interest is a personal interest, and it's the first question that is asked in any analysis. And whether that question – sorry – whether that person has that right or Fourth Amendment interest to assert at all is an objective fact. It doesn't depend on whether officers knew about it or not. And that's the central problem here in the district court's analysis. Maybe I'm suffering from the same problem as Judge Smith, but I'm still having great difficulty following all of your argument here. The – they come across this car, and the music's on, the car is on. Everything to the common sense would suggest that the driver of the car just got out to go do something that he thought would take a few minutes and wasn't relinquishing any privacy right, which you say is the test. And so first they turn off the car, they turn off the music, they go searching through the glove compartment. And the – you're saying that because he didn't come forward at that point, they were in a position, viewing the totality of the circumstances as a reasonable police officer, to say that he had abandoned. I don't understand how that follows. Well, Your Honor, what I'm saying is that the district court was not in a – was in a position to find abandonment. This is separate than whether the officers reasonably believe that it had been abandoned. And that's a separate part of my argument. But what I want to focus now is on the standing issue, which is whether the district court, in looking at all the facts, including the fact that Biddle was there and went up to the police officers and tried to take something from the car and was asked, well, are you the registered owner, because we can only turn over things to the registered owner, didn't say a word, didn't say, yes, I am, but in fact disappeared and relinquished physical control over the car, disclaimed the car, at least implicitly, that under those circumstances – Although you just told me earlier that physical control is not the real test. The ultimate test is privacy. No, Your Honor. I was explaining – I was responding to Judge Smith's question as to what are the two criteria that the Ninth Circuit has put forth as hallmarks of abandonment for the – abandonment in a statutory sense or in a property rights sense. You agree this wasn't a Terry stop? Pardon? You agree this was not a Terry stop? Well, I think that the Terry rationale justified, for example, their brief intrusion to the glove box. How do you get that? Well, because there were two violations of the California Vehicle Code. It is a violation of the California Vehicle Code to leave a car with its engine running when it's unattended. And that's why they stopped? Well, the – That's not what they said, is it? The officer said that they stopped because they heard loud music.  And so they came to investigate. Is that a violation of the Vehicle Code? Which is also a violation, yes. And that's what they said was their reason for going in the glove compartment and checking that all out? No. They came upon the car, and they only followed the source of the music to the car because of the music. When they saw the car, they were – there was an additional concern, which is not only the music in a residential neighborhood, but also the fact that the engine was running with the door wide open in the middle of the night in a high-crime neighborhood. And then they tried to return custody of the car to its rightful owner. Well, let's back up here. Let's assume that somebody's got a car on their driveway. Yes. Say over in Oakland. They got it over in Oakland, and they got the music on, they got the windows open and all that stuff, and they got a bunch of people standing around. Do the police have a right based upon the loud music to go in and check whatever's in the glove compartment without a search warrant? Well, Your Honor, it would depend on the circumstances. Let's take these circumstances. Nobody's threatening them. No guns. Nobody said anything to the police other than just kind of backed away, and they did their thing. Do they have the right to go in the glove compartment? The circumstances in this case were that they had the key of the car. They were trying to return it to them. They took the key of the car. Right. They took the key. They created that problem. That's correct. They did take the key in order to immobilize the car. That would have been a target for theft. They thought it was going to move if they didn't take the key out? Well, there were 12 people around, so it was reasonable, I think, for them to take the key out. They could have done other things, but under – I guess my biggest problem is what right did they have to go in the glove compartment if it wasn't a Terry stop? And when they got there, they found out it was a perfectly lawfully registered car. It wasn't stolen or anything like that, right? Well, Your Honor, they found that it was registered owner was Ronnie Biddle, but Ronnie Biddle wasn't coming forward and claiming the car. So they wanted to see whether – What if his brother had taken it out, if he has a brother? I didn't know he has one. Somebody else is driving it. And they say, Ronnie Biddle's out here. That's right. He's home. His brother's got the car. Do they still have a right to go in and check the glove compartment? Well, nobody had answered, in fact, to that effect. So the circumstances they were facing were different. What if they didn't know? What if they didn't know? Well, then they would have, I think, under Terry, an obligation and a right to go and look in the glove box for indicia of ownership because it was their experience that this was a car that was a commonly stolen car. His car was a commonly stolen car? It had been stolen before? I'm sorry. The model was a commonly – Oh, the model. The model. The black Honda was one that was a target, often a target of theft. I see I'm out of time. You're out of time. And I don't know if I – Questioning the logic. Anyway, we may give you a little time to respond. Let's hear from the – Okay. I appreciate it. Thank you. May it please the Court, Jody Linker from the Federal Public Defender's Office on behalf of Ronnie Biddle. As the government concedes and the Court has noted, the officers immediately seized Mr. Biddle's car the moment they arrived on the scene. They took the key. They put it in their pocket. And that act of immediately seizing the car colored every action that occurred thereafter. I've got a problem with your case. Could you help me out? Please. I look at the district judge's opinion, and I notice that she cites for authority an Eighth Circuit case which deals with the intent of the police officers. Now, because this is an abandonment case, I have never seen any case in the Ninth Circuit that looked at the intent of the police officers to determine abandonment. As a matter of fact, 37 years ago, we first decided we looked at the intent of the possessor or owner. I was on that panel. So it's that old. And since then, we have done so. And there's three other circuits, including the Second Circuit, that have done the same thing. They focus on the intent of the possessor. Now, the district judge set up a different standard. We focus on the intent of the police officers, which is inconsistent with every case we've had for the last 40 years in our circuit. And that is a matter of law. We don't have we don't know what the intent what the factual intent is of the in this record, you could guess. But it seems to me that unless there's some reason why the Eighth Circuit should be used as the test rather than the 40-year test in the Ninth Circuit, that we need to send this back for reconsideration under the law that really applies. Your Honor, I don't believe that the district court did that. I think that the district court in laying out its standard of review on ER-6, which is the sixth page of the court's opinion, states this court's standard in Jackson, in the block quote, and then goes on to look at the Eighth Circuit standard. And the only thing different that this court did than what the Second Circuit has done and what the Eleventh Circuit does is limit the facts to those known to the officer at the time of the search. No, no, no, no, no. Our circuit limits what the abandonment, the intent of the abandonment. So it isn't what the police officers think. It's not their intent. It's the intent of the person in this instance, Biddle. It's his intent that they're so focused on. Correct. She has jumped from the Ninth Circuit to the Eighth Circuit, which talks about the intent of the investigating officers. Isn't that an error of law? I don't believe that she's done that. I believe that she's looking at the objective facts that are reasonable, the objective facts as looked at from the officer's perspective. What objective facts can the officer use at that time? See, now, you just jumped to their intent or their intent. But what we're supposed to be focusing on in abandonment is the intent of the abandoner. I believe it's correct that we look at the intent of whether the abandoner has so relinquished their interest in privacy that an objectively reasonable officer could come to that conclusion that they no longer have an interest in that property any longer. And I believe that is the standard that the Court laid out in this opinion. Yes, the Second and the Eleventh Circuits have said you are limited to the facts available to the officer. And the Ninth Circuit. I don't believe that the Ninth Circuit has, Your Honor. I thought I wrote that opinion better. Your Honor would know better than I what you wrote. I will concede that much. I think that the Court's decision, though, in Stevens, where they were looking at whether that abandonment was voluntary, you have to look just at the facts available to the officers at the time of the search. And it's the voluntary nature. It seems to me that the key is, was the car abandoned? If they had reasonable belief it was abandoned, then they have to do something with it. There's rules about it in the law. They do an investigatory search before the tow truck takes off and it goes on. But it all keys not from what the officers thought as they came up and saw a car, but the facts that as they deal with the defendant. And that's the part. That's the part that she failed to do. And we look at those facts of whether the person has abandoned their expectation of privacy from the perspective of the officer. And we look at objective facts. I'm having difficulty. As soon as you say perspective of officer, you're back with the intent of the officer, which is just what 2nd and 11th and 9th say you can't do. In fact, what the 2nd and 11th say is only that you can look beyond the facts known to the officer at the time of the search. And so it's actually a different question. And I think when we look in this circuit, as the government concedes, the standing question is a two-part inquiry. First, we look at the expectation of privacy. And the defendant has the burden of showing that. The defendant clearly has the burden of showing that he has an expectation of privacy in the property. Then there's a second analysis in an abandonment case, which is unique for the standing question in an abandonment case. The burden then shifts to the government. And in every other area of Fourth Amendment analysis, as this Court has determined and as the Supreme Court has determined, where the burden is on the government to show a relinquishment of a right, then you are limited to the facts known to the officer at the time of the search. And we need to look no further than when there's a probation or parole search condition. Okay. I understand that because at that point, they're taking over custody of the car as an abandoned car, which they have a right to do.   does the district judge have to abandon his car and tow it off to the toll yard? But you still have to start with the intent of the defendant, and that the district court never did. But if you did do that, there's a lot of evidence here that a district judge could find that the defendant did abandon his car. And, Your Honor, I think that the Court disagreed with that. And maybe, Your Honor, saying that those factual findings were clearly erroneous, but I think that the Court went through all of what Mr. Biddle did to show that he had not relinquished his expectation of privacy. I think, well, you and I read that opinion differently, but it seems to me she's following the Eighth Circuit approach of moving it over to the intent of the officers. And I submit that she's only following it to the extent of, at what point do you stop collecting facts? Do you get to look at facts that were acquired post-search, or can you only look at those facts that were available to the officers at the time of the search? And I think that's the distinction that the government's pointing out, and the only distinction that the government's pointing out. Let me ask you this question that maybe will resolve this issue that my colleague has raised here. At some point, the issue of abandonment appears. But not initially. Initially, the police come up on the car, the windows are open, the keys are in there, people are all around, there's a lot of music playing. No discussion of abandonment, no thought of abandonment. They simply come in, they reach in, they take out the keys, then they go in the glove compartment to see what they can see. Maybe they're looking for a gun, I don't know. But anyway, they found the owner's certificate, and only then, only then do they ask about Mr. Biddle. Does Mr. Biddle's intent, putting aside altogether what the officers did to that point, have anything whatsoever to do with their going in the glove compartment? No. And if we were to find that going in the glove compartment under the circumstances was unjustified without a search warrant, what happens at that point? Do we even, I guess what I'm asking is, if the district court was wrong, in part based upon the opinion that my colleague wrote here, does it really matter much if there are alternative bases for a decision in the lower court's decision that get us to the same place? I think the court can nonetheless affirm the district court's ruling if it finds that the earlier search or seizure of the car then tainted the rest of the actions of the police officers. And I think it's clear that in this case it did. And what Your Honor said at the beginning of this case is exactly what the district court said repeatedly. This defies common sense. What these officers did every step of the way at each juncture defied common sense. Can I shift gears on you for a minute? There's a second part of this appeal, which is the dismissal of the indictment. How could the district judge dismiss the indictment? Well, Your Honor, we have conceded that the remedy is appropriate, as the government has requested, to reverse the district court's dismissal of the indictment. So unless the court has further questions, I don't think you need to get into the jurisdictional question raised by the government because we agree with the remedy that they've proposed. If there are no further questions, I see us going in the right direction, and I don't want to create any problems. You have to define who the us is. That's true. That's true, fair enough, Your Honor. I think we have agreed to disagree maybe. I don't know that we're going to resolve that. Let me be sure I understand the dismissal of the indictment. Of course. You have conceded that the district court erred there, right? I have, Your Honor. Okay, and the remedy from your perspective is what? The remedy is to reverse the district court's dismissal of the indictment. Okay. I shouldn't infer from questions from the bench. I should not, Your Honor. Any judge is going to come out because we have deep discussions among ourselves, and moreover, we have to take a lot of learning from our law clerks, and they're sitting there with all sorts of differences. Wondering why you haven't asked a particular question, most likely. Fair point, Your Honor, and I will just say on one thing, and my colleagues are probably surprised that I would sit and be quiet because they've never seen that happen in their lives, but I will just get to the one other issue, which is the community caretaking, in case the court gets to that second part of the government's analysis and their request, and I don't think that the court can look at the community caretaking function in the absence of abandonment. It doesn't need to be in the standing analysis, but there is no community caretaking function. There's no need to protect the car from vandalism or theft if it has not been abandoned, and so we would still need to get into the abandonment analysis and we still would go through the facts that the court found in this case, which every fact led to Mr. Biddle showing that he wanted to retain his interest in that property and not relinquish any interest in that. Let's assume for the sake of argument that abandonment occurred by Biddle. I want to ask that for a reason, a follow-up question. If you make that assumption, do the police officers, are they required just to let the vehicle stay there? Or can the police officers then, if it's reasonably due to it so, tow the car off to some place where it's away from the crowd and the rest? And there are two different abandonment analyses. I want you to assume that it's been abandoned. It's been abandoned legally under the California Vehicle Code, and therefore they could then tow the car if it has been legally abandoned, and they could then do an inventory search. Okay. And they can have an inventory search to make sure that somebody doesn't say, you took my diamonds. Absolutely. They could do so in that circumstance. So even the search of the glove box or the search of the trunk where the gun showed up, those would be valid if you assume prior to that that there's been a real abandonment? If you assume prior to that. I don't think anyone's arguing that. Your Honor has asked me to assume that. But I don't think that anyone's saying it was abandoned at the time they seized the car, at the time they searched the glove box. The government is claiming the abandonment occurred from one fact and one fact alone, his remaining silent in response to the officer's repeated questions. Factual determination to determine the intent of the defendant. Correct. And that goes under the totality of the circumstances, as Judge Smith pointed out, that there is a totality of the circumstances. So whether the Court uses the standard applied in the Eighth and the Seventh Circuit or the standard that's in only the Second and the Eleventh Circuit, I don't agree with the government's assertion that the Fourth, the Fifth, the Tenth. I think a close reading of those cases shows that they are not abandonment cases, and it doesn't expand the facts that are available to the officers. What about our Nordling case? I'm just going to read this. The inquiry about abandonment in the Nordling case is it's made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of property. Now, this particular case, and we'll have to see how that dovetails with my colleague's fabulously written opinion. But in this case, that does not require any statement by Mr. Biddle. There's no denial of ownership. I'm just going to read this. The inquiry about abandonment in the Nordling case is it's made in light of the totality   Now, this particular case, and we'll have to see how that dovetails with my colleague's fabulously written opinion. But in this case, that does not require any statement by Mr. Biddle. There's no denial of ownership and physical relinquishment of property. Now, this particular case, and we'll have to see how that dovetails with my colleague's fabulously written opinion. Okay. Any other questions by my colleagues? Okay. Let's have rebuttal. We kind of ran you over before, I think, but we'll give you a minute, okay? I appreciate that. Thank you very much, Your Honor. I'd just like to make a couple quick points. First is that absolutely the court, if you look at the district court on page 6, ER6, used the wrong legal standard. Abandonment is part of the standard. What do you think of Judge Wallace's opinion? Well, I mean, I couldn't say enough about it. But it's consistent with the First Circuit, the Second Circuit, the Fourth Circuit, the Eleventh Circuit. And if you look at, for example, the Second Circuit's case in LaVosteur, just to go to my opponent's discussion about climate, in that case, the Second Circuit specifically found that a letter or an article that had been found almost a year after the time of the search that bore on whether the defendants had actually abandoned the premises at the time of the search was something that the district court properly considered as a part of the abandonment inquiry. Abandonment is part of the standing inquiry, which is a question of whether somebody has a Fourth Amendment right to assert at all. And it's completely separate from what the officers did and whether that was reasonable in that certain case. So in these circumstances, the district court absolutely committed legal error. And no taint forced this abandonment because it was justified by the circumstances the officers came upon, which was violations of the vehicle code. And I would ask for a reversal. Okay. Thank you, Ms. Channon. I would caution you to be very careful how loud the musical is in your car and where you park it. Oh. Well, thank you. Thank you. Thank you both. And the case of United States v. Biddle is submitted.
judges: Rakoff, Wallace, Smith